Thank you, Your Honor. Lady Plaintiff's Court. I did want to point out, I do have a... Just a second. There's still people coming up and what's... Everybody take your seats, please, and let's... And then we'll give them a second to get seated. I apologize, Mr. Stamps. Give him his time back, please. Okay, I think everybody's situated now. Mr. Stamps, you may proceed now. Thank you, Your Honor. I want to say that the police court, I'm a law clerk inside the bar, and I think we have had it approved by... Certainly. Welcome. My wife insisted he come because she doesn't trust me out of the house without somebody watching me, so she came down here to meet with me. But I want to say that I've been practicing for a while, for some years, I've never been to the Fifth Circuit, and I appreciate the opportunity to be here today because it gives me the opportunity to represent my client and be an advocate for her rights. My client's Maria Wilson, and she thought she had purchased a policy of insurance to cover a loss in case of a fire of her contents. She had a loss, she had a fire, and filed a claim. They died. On her behalf, we sued Kemper and their subsidiary, United National Insurance. Anyway, after we filed a lawsuit, the parties that served defendants, which included Kemper United National, Robin Wilson, the agent, and Angela Washington, her supervisor. At any rate, we filed a lawsuit, they were served, and they were moved to federal court. The original lawsuit was filed in Claiborne County, Mississippi. It's where the loss took place, where the contract for insurance was entered, and that's where my client lived, that's where I think Robin Wilson lived, and Ms. Washington lived in Adams County, but it's all within the state of Mississippi. That's where we are now. They removed it based on fraudulent joinder, and we filed a motion for remand. Right, and I guess our first issue is whether the district court erred when it asserted diversity jurisdiction instead of granting the motion to remand. Is that right? That's correct, yeah. Okay. The position, I think, of your friend on the other side, and I think also the district court resolved this, they said that as a matter of law, all the claims failed against those defendants under Mississippi law at the time of removal. So we used the term fraudulent joinder. That's an old-fashioned term instead of improper joinder, but it doesn't mean there's fraud. It just means it doesn't state a claim under Mississippi law, so those parties are not really there. So nobody's committing fraud or anything. That's just an old-fashioned term we use. In our complaint, we sued Robin Wilson, the agent, for negligence, and we have plenty of cases where we cite to the court that agents can be negligent in procuring insurance. According to my client, there are two Wilsons in the case, so I might get a little confused. Maria Wilson is my client. Robin Wilson is who we're suing, along with the other parties on the defense side. According to her affidavit, Robin Wilson, who lives in the community with them and knows them very well, found out that her mother, Maria Wilson, my client's mother, had become incapacitated, and she stopped paying the premiums on the insurance. Now, Maria Wilson lived right next to her mother's house, a trailer, a small trailer. On 2170-B-A, where is the trailer? It's right outside the window, really. It's right there, where the insurance policy was issued, Judge. I think it's the same location, Judge, if that's what you're asking me. 2170-A, the trailer was next to the house that burnt down at 2170-A? Yes, sir. It was, yes? Yes, sir. Yes, sir. That's correct. That's correct. But, again, Robin Wilson knew this because, according to the affidavit of Ms. Wilson, she knew the living arrangement when she came and sought to sell Ms. Maria Wilson's policy of insurance, Your Honor. Didn't the district court resolve this and conclude that it had diversity jurisdiction because it said even if Robin did say, you're covered with no qualifications, the policy that eventually comes and your client performs on by paying required your client to live in the house, but instead you're agreeing she lived in the trailer? That's how Judge Bramlett resolved it. What's wrong with that? My client, there's no evidence. Again, this is a motion for remand. The courts are limited, I believe, based on the case law I've read, in Smallwood, some other cases, and how they can inquire about whether there's an improper joinder, fraudulent joinder, whatever you want to call it. In this case, according to Smallwood, they could do two things. They could do a 12-6 evaluation analysis, which was not done. And Smallwood says that if the plaintiff passed the test of a 12-6 motion to dismiss, game over. You're saying it's improper to look at, at this stage of the proceeding, whether or not she actually lived in the trailer? That wasn't before the district court to determine that? Is that what you're saying? According to Smallwood, that's generally the end of the evaluation, but it can, in rare cases, pierce the pleadings. In this case, apparently that's what Judge Bramlett did. You do or don't dispute that she didn't live in the house, number one, and, two, the policy required her to get coverage to live in the house? I do not. I concede that she did not live in the house. And what about the second point? Does the policy require her to live in the house? What is the policy? My client says the only policy she knew was the policy. Was the application, right? The application. But the difficulty I have with that is she is seeking coverage under the policy. How can, and the policy does or doesn't contain the live-in requirement and does or doesn't contain the mandatory arbitration. There's no evidence. I guess the point is, if she's actually trying to recover on the policy, how can she pick and choose parts of the policy? Well, it's not she picking and choosing, Judge. But she is contesting that she consented to the arbitration clause. Well, that can be separate from the provision about coverage. You're right. Good for you. Finish the thought on the living in. Do you dispute? But if we do reach the policy, do you dispute that to get coverage, she had to live in the house that burnt down? Well, my problem with this situation, Judge, is that Robin Wilson knew all the arrangements when she . . . I can't hear you very well. I'm sorry. Robin Wilson knew the living arrangements when she induced Maria Wilson to buy the policy. She knew she wasn't living in the house. That's a clear misrepresentation. If she said you're covered even though you're in the trailer. Exactly. But if the law, and I'm not saying it does, but if Mississippi law imputes even to an illiterate person the knowledge of the contract, isn't that problematic for you? Well, the problem I have is that there's no evidence that Ms. Maria Wilson received the purported policy prior to the loss. There was no evidence to that effect. Of course, in this evaluation of a person pleading, it's probably a limited inquiry as I understand it. According to Smallwood, no discovery is done unless maybe special circumstances. We did not do . . . we tried to follow the law. We did not do exhaustive discovery pending the court's . . . Ultimately, what the arbitrator found is too late. The arbitration claim was filed too late. Maybe if you could switch before your time runs out to what your argument is against the arbitration clause requirement. Well, we said the arbitration clause was not included in the original discussions about the policy. I don't think anybody here can say, based on what we understand, they acknowledge that Ms. Maria Wilson could not read and write. I don't think anybody can say that she went into Robinwood for the purpose of obtaining an arbitration clause. She went in, she wanted . . . Ms. Wilson approached her and told her if she paid the premium that her mother was paying, she'd get paid. That's part of the fraud too, Judge. Yeah, that's part of the fraud. Well, I'm sympathetic, but it seems like Mississippi law is saying this would be . . . one could defeat contractual arrangements all the time because you could say I just didn't read it, or I'm uneducated, I can't read it, or I'm illiterate. So Mississippi law has this duty to read concept, and it's triggered. They cite Driscoll for this proposition. If you start paying on the contract, you're presumed to have read it or had someone read it to you. I think in the Driscoll case . . . It's in an arbitration case, but do you have any case law that has sort of an illiteracy exception to the duty to read? Are you even arguing that? No, we don't have any. We don't think she . . . there's no evidence she received the policy. But she did pay the premiums, and she's seeking coverage under the policy. Well, she paid the premium based on what the application said that she signed. She never signed any other documents to be attached to. And she was relying on Robin Wilson to ferret her through this because she's . . . No, that's understandable. So she was relying on her neighbor to ferret through this. Now, did Robin Wilson not know the terms of the policy? When she sold this policy, knowing that my client was living in a trailer next to the house, didn't she know the terms of the policy she was selling? Yet, she sold it anyway, knowing my client was living . . . And this is an issue for the jury to decide, ultimately. A lot of this argument that we're discussing now is like jury argument to me. It's not for discussion on remand because I don't think the law of Mississippi requires us to, in a remand argument, requires us to go so far as to resolve the issues on the merit. That's what Judge did. He resolved this issue on the merit, even though there was conflicting evidence. You know, and I . . . But I guess maybe because your brief didn't cite this case, but as I understood it, the district court upheld the arbitration award citing this case, Smith v. Union National Life. Do you remember that, Southern District of Mississippi? It seems to be standing for this proposition that's in Mississippi law that may be harsh in outcome, but that if you're seeking to benefit from a policy, you have a duty to have read it or had someone read it to you. Well, I hadn't read that case correctly. I don't think it would apply in a situation where you don't get a chance to read that policy that's supposed to bind you. Right. She read the application. She hasn't read her. It was filled out by Robin. Here you have two arguments as to why that law wouldn't apply, and they're both factual. One is she was misled by Robin Williams. Right. Number two is she actually never even got the policy until after the loss. After the claim, exactly. Does Mississippi law allow you to have a fraudulent inducement claim such that she could sue Robin for fraud? Because the contract itself, if she knows the facts and she's inducing someone to enter a contract on purpose, so she could have sued her for the fraud and that's part of your initial claim that the remand was improper, it should have been remanded? It's in the complaint. It's in our complaint. It points out as best we could to satisfy the elements of fraud in Mississippi. You've got the elements of fraud, but even if it's a contract that you paid on, the inducement to enter a contract when knowing the true facts and you're the person who led the person to do the contract, that you could be independently liable, separate and apart, not liable on the contract, but liable for defrauding the person and getting a benefit from it. Because she gets some kind of bonus or something for getting this person signed up. I believe that Kemper and the United National should be liable under the theory of responding superior, Your Honor, that she was in a courses with them at the time this fraud took place. So that's why they should be liable for her fraud, Your Honor. There's no question that we have satisfied the elements of fraud, clearly, in our allegations in the complaint. Well, that's not what the district court found. No, he found . . . The district court found it didn't make a claim for fraud. It's in the complaint, Your Honor. Right, but if he had thought you had a claim for fraud against Robin, then it would have been remanded. It was because it was found not to be a claim of fraud and find that the claims were not valid under Mississippi law that he didn't remand in the first place. This is not necessarily a hostile question. This is a should it have been remanded to begin with question. It definitely should have, but that's why we're here today, Your Honor, because he didn't remand it. We think he erred in not remanding it based on the complaints and based on the law. Okay. You've saved time for rebuttal, Mr. Stamps. Thank you very much. Thank you. Ms. Slay, we'll hear from you now. May I please support it? You may proceed. Latoya Slay and Breonna Caldwell, Butler Snow on behalf of Appalachia Police. Your Honors, the district court considered the issues before this court numerous times and each time reached the same conclusion. The court should affirm each of the district court's orders on appeal for the following reasons. First, the district court properly denied remand because Appellant Wilson fraudulently joined Appalachia Robin Wilson and Angela Washington as the record does not support viable claims against them under Mississippi law. Can we stop right there? Yes, ma'am. Why is there not a viable claim against Robin Wilson under Mississippi law for leading the other Maria Wilson into this contract that was bad for her but good for Ms. Robin Wilson? Yes, Your Honor. Under false pretenses. When she knew good and well, it wouldn't give her any coverage and she was getting a kickback. It's not an improper bonus or whatever it would be called. I don't mean that in a derogatory manner, but a benefit. Yes, Your Honor. The law of the circuit imputes the affirmative duty to read, as Your Honors have pointed out. But I'm not talking about the fact that the contract, I'm talking about that she told her the contract said that she induced her to entering the contract knowing full well that it didn't cover her. Well, first, Your Honor, we contest that she said that, but taking that as true. But we have to, don't we? Yes, Your Honor. But fraudulent inducement as well under Mississippi law, it contradicts the plain language of the policy. The policy is still imputed on the insured. It contradicts the policy. Even if the policy is never delivered to the insured? Well, first, Your Honor, I'm not found in the record where she disputed that she did not receive the policy to the lower court or the district court. And I may be mistaken, but that was, for the first time today, I heard that she never received the policy prior to the loss. What's the best Mississippi case that says that even if somebody's lying to you and leading you to get a contract, that you're stuck with it and you can't sue them for lying to you? I'm not talking about whether the contract terms apply to you. I'm talking about whether you can independently sue them for lying to you. What's the best Mississippi case for that? There's cases under Texas law that I think of about Formosa Plastics and others and its progeny, but what are the Mississippi cases on that? Maldonado, and I may be pronouncing that wrong, M-L-A-D-I-N-E-O. Even if somebody fraudulently leads you astray to induce you to enter a contract, if the contract terms don't provide coverage, you lose? If the contract, if the fraudulent inducement, if the plain language of the contract contradicts what the fraudulent inducement was, yes. Maldonado. Okay. Yes. Thank you. Let's say that's right, and the cases the district court cited were Smith, the federal case, and then the Mississippi Supreme Court case, Godfrey Bassett. But if that's true, what would you point to, maybe quote it from the policy that cured any and all misstatements by Robin Williams? What in the policy would have alerted Marie Wilson that by living in the trailer she wasn't covered? If you look at the R-O-A 49, number six, described location means the dwelling, other structures and grounds, or that part of the building where you live that is located at the address shown on the declarations page.  But what, so she lives, no one's disputing, or maybe you are, the trailer is at 2170A. That's the described grounds. Yes, Your Honor. The trailer, based on my understanding, is on the property, but was not included in this insurance policy. It said where you lived. And Ms. Maria Wilson acknowledged that she did not live in the resident's property, and she acknowledged why she was seeking, she acknowledges in her affidavit why she sought to go get policy because her mom was incapacitated and was no longer in the home. She also represented she was going to move into the home. But just simply, if Robin Williams is sitting down with her and says, you'll be covered, and then she looks at the policy, where does it say, even though she does live at 2170A, that in fact she won't be covered? Where does it tell her that? Where's the cure? And correct me if I'm wrong, you're asking... If you're right about the law, that even though she's illiterate, and even though she may have been lied to, which is the assertion that you dispute, still, case is over, there is diversity of jurisdiction, because even if Robin did lie, the policy cured it. And I'm asking you, where in the policy was she told that by living at 2170A, the covered ground, she still wouldn't get it unless she lived in the separate house at 2170A? Your Honor, I cannot point to you in the policy where it says that. But if it's ambiguous, we will construe that against your client. Yes, Your Honor. But again, I would point you again to the described location, which means the dwelling, other structures and grounds, or that part of the building where you live that is located at the address zone on the Decorations page. Why is it at another structure? Your Honor, I think our client, and excuse me if I'm wrong, contests that this trailer or structure is at that property. This also was not... I'm sorry, let's just stop on that. So now you are disputing that her trailer was at 2170A or not? Yes or no? I will say I'm not sure, because the district court did not even consider whether or not... Well, wouldn't we have to send it back then? No, Your Honor. I think... No, I think, and I apologize. But the trailer, as everyone understood, and as she admits in her affidavit, was not included in the policy. That was conceded. I don't think that's conceded, is it? I thought that they're arguing that. Maybe I'm wrong. Did they concede it at some point along the way? I think... I don't see how that's relevant. Her personal property, no one disputes, was in the house of the bird dam. That's what she wants the $20,000 for? Yes. Okay. But when you're saying, even if she was told by Rob and her friend, you're covered, when she got the policy, if she did, it would have made it clear to her that by living in the trailer, she wasn't. And I'm just asking you, one answer is, oh, here's where the policy forbids coverage to you if you're not in the house of the bird dam. Another answer is, that's never been your opponent's argument. They've never denied that. They didn't argue it to the district court. They didn't argue it to us. It being that the misrepresentation actually wasn't here. Those are two different answers. Which are you making? I'm making it, and I'm making the representation that she never lived at the property that was covered underneath the policy, which is the house. And the policy required for her, that's the contents that burned down, the house. She lived at 2170A. You're just saying that the policy was very exact, she had to be in the house? Yes. That's what I'm asking you to read to me. But if you can't, if it's just what you've already read. Yes, Your Honor. Another answer would be, that's never been their argument. They've always acknowledged that, or at least stated that the policy did require her to live in the house that burned down. Their argument has been instead that this law doesn't apply. The cure. Yes, their argument is that the law does not apply. Their argument has never been that the trailer was covered underneath the policy. Their argument was, she was fraudulently induced to believe that she did not have to move into the house to get the policy. That is the argument that they made to the lower court. That she did not have to move into the house to get the policy. They have never contested that she did not have to live there. Well, but that's the same thing. She doesn't have to live in the house to get the policy. If the thing is there... It wouldn't matter, because if the policy did cover it, she was covered, and there's no claim against Robin for negligence. Whether it was covered or not would be irrelevant, because if the policy did cover it, there would be no claim for negligence. Yeah, it would, because she's had to go through this whole rick-a-mole for years and go to pay all the lawyers and stuff on something that was covered, that she thought was definitely covered, and that you all contested all for years. So I don't think that that works. Maybe try something... I'm sorry, continue on with your argument. I'm just trying to, in real time, respond to this evolving case. Yes. As you are as well. Could you proceed with your next argument? Yes, ma'am. Second, the district court properly compelled Appellant Wilson to arbitrate her claims because she agreed to arbitrate, and there was a valid arbitration agreement. Wilson's lack of signature, as the court pointed out, on the policy is immaterial, because Mississippi law and the application support that Wilson agreed to arbitrate her claims. Driscoll is the decision here that we look to, and it states that all fall in receipt of the policy, even if it's a counter... that the policy is actually a counteroffer, and once you pay the premiums, that is performance and you have accepted the policy. The policy and the arbitration agreement were both included in everything in the policy, and again, for today, they have not stated that they did not receive said policy. While the arbitration agreement may be separable as counsel argued, the law still weighs in favor of arbitration unless a claim for fraud exists regarding the arbitration agreement and clause specifically, and that is not alleged within their complaint. Therefore, we ask that this court properly compel... Apologies. The district court therefore properly compelled Appellant Wilson to arbitrate her claims because she paid the premiums under the policy. Third, the district court correctly denied reconsideration of its order compelling arbitration. Here, the district court properly applied the three-year limitation, which is akin to a statute of limitations because Appellees had no reason to arbitrate until Appellant filed an improper form. Even though the statute of limitations... My apologies. Even if the statute of limitations was improperly applied, it would be harmless error because the arbitration agreement specifically requires arbitration and states there's a waiver or trial by jury. So Appellant had this argument in their briefing regarding equitable tolling. Appellant never submitted claims to arbitration to receive equitable tolling, first and foremost, but even if the court should have told or shouldn't have told our claims in arbitration, that would just mean that both parties have waived their right to assert any claims because there was a waiver of three years limitation listed within the contract. And my last argument, Your Honor, is lastly this court should affirm the district court decision to confirm the arbitral award because the arbitrator made no material mistake of fact that constitutes vacating that award. Again, Your Honor, Appellant Wilson never submitted her claims to arbitration making any argument that equitable tolling applied to her claims immaterial. Nonetheless, when you consider equitable tolling is inapplicable here because you have to look at that there was extraordinary circumstances or that there was... My apologies. You have to look because no extraordinary circumstances arise from her waiting until the last minute to submit her claims. But you also... Can you remind me what the record shows regarding the notice she would get about... I know it says... You say that it says it in the contract to go to the arbitration. What forum are we talking about and did she get any letters or anything from the... What does the record show on when she went to the forum and what they said the arbitration would be and what the costs were and all of that? What does the record show, if anything, on that? The record on R-56, ROA-56, states that... And you asked specifically how to initiate the arbitration. What is the forum for arbitration that the contract specifies and eventually was initiated? And so what does the record show on that? So ROA-57, it states, if a claimant wishes to initiate arbitration, he or she must provide a written request plainly labeled demand for arbitration by certified mail addressed to the company. If the company wishes to initiate arbitration, it must provide a written request plainly labeled demand for arbitration by certified mail to the claimant's last known addresses. The parties agree to commence the arbitration hearing within 90 days. Is your question... Tell me more specifically about the arbitration in this particular case. Once it was... Regardless of whether it was late or not, once it was init... The process of initiating it. Once the process was... I'm sorry, Your Honor. I'm not actually understanding your question. What specifically, once the process was initiated, once we initiated arbitration? Who... I want to hear about the arbitration, yes. So where was it, how much did it cost, if it says it in the record, all of that? I'm not sure if the record holds how much it cost, but we initiated arbitration through the triple A. Triple A. And we... And I will say, Your Honor, the party, my co-counsel, not my co-counsel, but the counsel that was on this case had a medical event and I'm here to do it, so that's why I'm not as familiar with the record as I should be, but arbitration was initiated through triple A. We paid for it, part of the contract, and... You relied heavily on the Driscoll case. Do you have a case similar to Driscoll, but in the arbitration context, that a policyholder's performance payment actually confers sort of its consent to a mandatory arbitration clause? I do not have a case that states that it's similar in the arbitration context, but Mississippi law does not distinguish it. Just two observations, because this does... Ultimately, we're making an eerie guess, and I would think it's very important for your client in Mississippi to have performance binding a policyholder as to anything that then ends up in the policy, correct? And similarly, second portion of this case is, if there happened to have been a misstatement, the law, as you're describing it to us, is that it's cured if the contract clarifies it. Yes, Your Honor. All those are very important propositions for us to get right. This is a policy for how much money? $20,000. Okay. So the case before us is over $20,000, and it'll be deciding those two very significant Mississippi law questions. Yes, Your Honor. And I would just reiterate that Mississippi law is very clear on the duty to read and imputing the knowledge of the contract onto the insured. There is clear case law that's throughout the brief that is throughout the district court's order that holds that. And even when fraudulent misrepresentations are made, if those misrepresentations contradict the plain language of the contract, there is no claim that can be held for negligence or for fraud. And thinking about this in the bigger picture, it's because they said it is improper for you to rely on that to satisfy the probable cause standard because you can't . . . One of the . . . What could be the probable cause is that you just fail to read your contract and you fail to understand your contract. And my point is you're testing in a $20,000 case, you're testing both of those propositions in pretty extreme circumstances as to an illiterate person whose close friend spoke to her before that policy was confected. Well, Your Honor, the Mississippi Supreme Court has also held that even where there are confidential and fiduciary duties, even in those cases, the person who is the insured still has the duty to read. There is no exception to the duty to read and to imputing the knowledge onto the insured under Mississippi law. Even where there's a fiduciary duty, even where there's a . . . Even where there's a . . . No, we understand. That's your absolute strict reading of the law, but you're asking us to test it and apply it in a case as to a woman who is illiterate over $20,000. Yes, Your Honor, because that is Mississippi law. Underneath Mississippi law, that's just the case. That's what we're asking. Thank you. Thank you. We have your argument. We appreciate it. Briefly, I'd like to rebut the information about the arbitration. I think it should be clear here that my client never, under basic contract law, she never agreed to her arbitration clause. Do you have a copy of the contract and did you argue that before, that she didn't ever get a copy of the contract? Did you ever argue that before the district court? No, ma'am. I think it's on . . . That's an affirmative defense they're presenting. I think they have an affirmative duty to say, according to our records, she got the policy on this particular date. The first time that it's ever been suggested she didn't actually receive the policy is today? In her affidavit, she says she received it at a later date, but there's no evidence that she received it before the loss occurred. The first time that's been suggested is today? Pardon me? Is the first time that that's been suggested, that she received it after the loss, is today? In the record, is there a point where that was argued? No, not on the motion remand because they said limited discovery is done. No deposition should be taken. On the issue of remand, just give me your one best Mississippi case that Robin Williams would still face liability even if the policy cured her alleged misstatement. What's your best Mississippi case? That's all I want. I don't have a Mississippi case to that effect. Okay, but that's problematic. Well, I think it's a matter of the facts, Judge. No, but I guess that . . . I agree with you. It is a matter of the facts, but where have you ever disputed that the policy required her to live in the home that burnt down? Where have you disputed that? We have not disputed that because that issue really never came up, per se, in the litigation part of it because I thought we were relying on Smallwood as far as remand is concerned, Judge. It says, as a deliberate inquiry in the court, it cautioned trial judges from using the strike . . . piercing the complaint not to go to the task of resolving issues based on the merits. For that reason, we thought this would have been remanded on its face, as the judge suggested earlier. Nowhere in the policy does it say that, though, that I'm reading. I have a copy of it right here. I know you didn't argue that in your brief. You never argued that below. You've always operated, as I understand it, on the assumption that it actually required her to live in the house. If I'm wrong, then I need a record site to where you argued it didn't or anywhere in your brief. The thing we argued was she never received a copy of the quote about policy. That's been your argument. But . . . But you argued that in her affidavit. She said, I got it on X date and it's after the loss? Well . . . Or not? At that time, that was . . . It doesn't say that. We said she got it at a later date, Your Honor. She didn't get it at a later date, but it says specifically . . . It doesn't say vis-à-vis the loss when it was? It doesn't say it with reference to the loss? No. The affidavit didn't say that, no, ma'am. Okay. But again, I think it's . . . That's their affirmative defense. I think they have to prove that she did get it. If they're saying that they imputed to her and she read it, I think that's their responsibility, which they did not do in this case. Your Honor, but on the arbitration, I don't think there's any question that she never agreed to arbitration. It's so interesting that . . . Why wouldn't the logic of Driscoll impute to her that she agreed to it? What? Why wouldn't the logic of the Driscoll case that they heavily rely on apply here? I don't think the facts apply in this case. In the Driscoll case, as I recall, the insurer requested a certain policy. I guess it went through underwriting. That's a thing, too. In this case, they only investigated where she lived there after the claim was filed, but that's another issue. But in the Driscoll case, I wanted a disability, I think, rider or something, and they came back and said, we don't sell that policy. She got the policy. There was testimony that she got the policy. She read the policy. The agent physically handed her the policy. The agent didn't hand my client the policy and read it to her and say, you're not covered, and she continued to pay the premium. That's not the facts in this case yet. That's why I don't think the Driscoll case should apply in this instance. Your Honor, but it's interesting. They put so much burden on my client. They don't put burden on Robin Wilson to know the terms of the policy that my client asked her to sell it. She knew the condition of where she was living. Okay. You need to wrap it up because the red light's on. One other thing, too. The arbitration was not invoked . . . provision was not invoked by either party within three years that was required to do. Now . . . Okay. Thank you very much, sir. Thank you. I understand you have your argument. We appreciate the arguments in this case. That concludes the arguments for today. We will stand in recess until tomorrow. Thank you.